STATE OF MISSOURI EX REL. STATE HIGHWAY COMMISSION OF MISSOURI, APPELLANT, v. S. M. RIGGS, RESPONDENT.—47 S. W. (2d) 178.

Springfield Court of Appeals. March 7, 1932.

1054

*John W. Mather* and *Jean Paul Bradshaw* for appellant.

*Goodbar & Gilster* and *Durward S. Brown* for respondents.

SMITH, J.—This case is here by plaintiff appealing from a verdict and judgment rendered in the circuit court of Laclede county wherein the defendant obtained judgment in a condemnation proceeding to obtain right of way over defendant's land for the establishment and construction of Highway numbered 66.

There is no controversy here over the pleadings. The petition is in the usual form alleging that the plaintiff is unable to agree with the defendant, owner of the land described in the petition, as to the proper compensation to be paid for land taken and damages to other lands and alleging that the acquisition of such land is a public necessity and is for the purpose of public use, and that it is necessary to condemn said land and right of way, and prays the court (or the judge thereof in vacation) to appoint three disinterested freeholders, residents of said county of Laclede, as commissioners to assess the damages, if any, which the owner of said land may sustain, and the just compensation, if any, to which he may be entitled in consequence of the establishment, construction and maintenance of said state highway, over said land, taking into consideration in determining said damages or compensation, the benefits, if any, to be derived by the owner, as well as the damages sustained thereby, and further prays for all proper orders, judgments and decrees.

The judge of the court in vacation appointed three commissioners, who qualified to act as such, to assess the damages, if any, to which the defendant might be entitled because of the taking of the land described in the petition. The land taken for right of way is minutely described in the petition, and amounts to 2.67 acres, more or less.

The commissioners on the 15th day of April, 1930, filed with the clerk of said court their report duly sworn to before said clerk in which they allowed the defendant as damage the amount of $150. On the 24th day of April, 1930, the defendant filed with the clerk of said court his exceptions to the report of the commissioners, setting out several reasons why the report was improper, and the "defendant moves the court to quash the commissioners' report and if the motion is overruled, that a jury be empaneled and a trial be had under the supervision of the court as of ordinary inquiry of damages, in order that the defendant's damages may be properly assessed."

At the February term, 1931, of the Circuit Court of Laclede county, the case was tried to a jury, resulting in a verdict being returned in favor of the defendant assessing his damages at $1000 and his special benefits at nothing. On the 14th day of February, 1931, the court entered judgment in accordance with the verdict returned by the jury.

Motion for new trial was filed in due time, and was by the court overruled. Affidavit for appeal was filed and the case is here under five assignments of error, which we shall consider in the order presented.

The plaintiff contends first that the court erred in admitting evidence of damages resulting from an excessive charge of dynamite set off by an independent contractor during the period of construction of the highway and long after the appropriation in eminent domain, for the reason that: (a) The finding of the jury must be made as of the day of the commissioners' award. (b) The jury may consider only such things growing out of the taking as would in the reasonable, careful and prudent construction of the improvement be so apparent on the day of the appropriation as to depreciate the market value of the land on that day. (c) The plaintiff is not liable in damage for the tortious act of an independent contractor. (d) The Highway Commission, being an agency of the State, is not liable for damages in tort.

The record shows that the appropriation of defendant's land took place on April 15, 1930. After the exceptions were filed the hearing on the exceptions were passed until February 11, 1931, and in the interim the road had been constructed, that is, when the commissioners reported the amount the defendant was entitled to receive, the Highway Commission proceeded with having the work done, before the exceptions were heard, as provided by sections 1342 and 8111, Revised Statutes 1929.

On examination of the witnesses for the defendant, the evidence showed that the highway as relocated was near a septic tank on the defendant's property and the defendant was asked this question, "Now, you mentioned something about a septic tank near the relocation. In making the relocation and building the road, was any damage done to that tank? and if so, what was it, by the workmen?" To this question the plaintiff made the following objection: "We object to that for the reason that any damage suffered should be brought against the contractor. The Highway Department is not responsible for that. The contractor is an independent contractor, and he had a bond posted to protect him, and the Highway Department is not responsible for his torts." This objection was overruled and the defendant testified as to the damage done to this tank by the discharge of dynamite by the contractor in constructing the highway.

Bearing in mind that this testimony was offered nine months after the land was appropriated, and after the work in relocating and constructing the highway at this place had been completed, and keeping mind that by statutory revision this work had been let to an independent contractor and that by the provisions of section 8116, Revised Statutes 1929, said contractor was under bond to secure the proper completion of said work, we think it was error to overrule the objection to the question. We are not holding that under no circumstances could the defendant be permitted to testify as to damages occurring to the property, but in this case it appeared that the objection was based upon the contention that the damage was done by the independent contractor, and it appears from the position taken by the defendant that assuming that it was done by the contractor that he was an agent of the State and that the State was liable for the acts of its agent. This position is manifest by the argument of counsel for defendant, for on this very point, the record shows that in closing argument counsel for defendant said: "The septic tank is destroyed because it was broken in two, as Mr. Riggs says, by the force of the dynamite, and it was objected that the State wasn't liable, that the contractor was. What business has Mr. Riggs with the contractor? That contractor was the State of Missouri. Of course, they have to operate through agents. They are responsible though." This particular argument may not be reversible because not properly presented here through the motion for new trial, as contended by defendant, but it does clearly show the position of the defendant at the time the question was asked with reference to the broken septic tank, and this position does show the vice of such question and the answer sought and obtained. To put it in the most favorable light for the defendant, the testimony should have shown that the breaking of the tank was one of the things growing out of the taking as would be reasonably apparent on the day of appropriation. It is going too far to offer the testimony objected to and admit it on the theory that it is competent because the contractor was the agent of the Highway Commission, and that the State was liable in damages, regardless of whether or not the independent contractor caused the damage through his negligence or whether it was one of the natural results of the construction of the highway. Our position is this, that where compensation is sought for the taking of the land and the damages to the other property not taken, that testimony should be limited to the time of the taking of the property and to the results that might be reasonably apparent at the time of the taking. Suppose the road had not been constructed at the time of the hearing before the jury and the blasting of the rocks had not been done and the septic tank had not been broken, what would have been the line of questioning and what would have been the theory of the

defendant with reference to this septic tank? It was not on the right of way, it was not touched by the engineers in surveying the route for the new location of the highway, and it was not touched by the contractor. So on what theory could the defendant have obtained damages for the breaking of this tank? It could have been on no other theory than that the placing of the highway there would naturally or as a reasonable and apparent result break and damage this tank; and if that could have been shown it would have been a proper element for the jury to consider in fixing the damages. But simply because it happened that the tank was broken is not enough. There should have been some showing that it was one of the results that was apparent and could reasonably be expected, and some showing that it was not caused by the negligence of the contractor or some other individual. Suppose it was the fault of the contractor, and that he was grossly negligent in discharging the dynamite (and the defendant assumes that would make no difference) could it be argued for once that the State would be liable, or that the defendant would not have a cause of action against the contractor for his negligence? We think not.

We hold that the court erred in admitting evidence tending to show damages to property outside of the right of way resulting from a charge of dynamite set off by an independent contractor during the period of construction and several months after the appropriation in eminent domain, without a showing that it was a result reasonably apparent on the day of the taking, and not the result of negligence on the part of the contractor; also that the plaintiff is not liable in damages for tortious acts, if any, of contractor, and that the State Highway Commission being an agent of the State is not liable for damages in torts.

We think we are sustained in this conclusion by the following authorities: Section 21, article II, Constitution of Missouri: Section 1342, Revised Statutes 1929; 20 C. J. 872; Mo. P. Ry. Co. v. Wernway, 33 Mo. App. 449; C. M. & St. P. Ry. Co. v. Townsite Co., 103 Mo. 451, 15 S. W. 437; McElroy v. K. C. & I. Air Line, 172 Mo. 546, 72 S. W. 915; Kansas City A. Ry. Co. v. Imp. Co., 166 S. W. 296; Railroad v. Pfan, 212 Mo. 298, 111 S. W. 10; Arkansas Mo. P. Co. v. Killian, 40 S. W. (2d) 730; Mo. P. & L. Co. v. Creed, 32 S. W. (2d) 783.

The second assignment of error is that the court erred in giving to the jury at the request of the defendant, Instruction B which is as follows:

"In estimating the damages to the land in controversy, the jury will consider the quantity and value of the land taken by the State Highway for right-of-way and the damages to the whole tract by reason of the road running through it; and deduct from these amounts

1058

the benefits, if any, peculiar to the said tract of land, arising from the running of the road through the same. And by peculiar benefit to the land, is meant, such benefits as that land derives from the location of the road through it, as are not common to other lands in the same neighborhood.''

The instruction is faulty in two material points: First, it assumes as true that there were ''Damages to the land in controversy'' and that there were ''damages to the whole tract by reason of the road running through it.'' In this instruction the jury were told that damages did exist and the jury were deprived of the privilege of saying whether or not any damages existed. In substance the jury were told to fix the amount of damages that did exist. The amount of damages, if any, to the whole tract was certainly a question for the jury, for many witnesses were offered by both sides on this very question, and as many as six witnesses testified that there were no damages to the tract but that in fact the whole tract was benefited. It was one of the issues for the jury, so made by the testimony offered, and we think it was prejudicial to give the instruction assuming damages.

The defendant contends that the pleadings admit that damages were due the defendant, and that damages were not an issue, and that the only issue was the amount of damages, and the defendant relies on the case of Gary et al. v. Averill et al., 12 S. W. (2d) 747, 751. We think that opinion not controlling here, on account of the difference in facts. In that case the court on page 750 in discussing whether or not the instruction assuming damages was error, used this language: ''This was not a disputed question, for the plaintiff's witnesses testified to such damage and gave their opinion as to the amount of such damages, etc.''

In the case under consideration here there was a sharp controversy as to whether there was any damages, and several witnesses testified that there was no damage, but there was a material benefit to defendant's property and that the property was worth much more with the highway than without it. It was, therefore, error to give the instruction assuming that there was damages, and instructing the jury to find the amount.

This instruction is also faulty in that it erroneously defines ''peculiar benefits.'' Our Supreme Court has recently ruled that such an instruction is improper. In discussing a similar instruction in the case of State ex rel. Highway Commission v. Young, 23 S. W. (2d) 130, 134, the court uses the following language:

'' Respondent's instruction No. 1 is further assailed on the ground that it erroneously defines 'special benefits' to be those which are unique and enjoyed by the respondent's farm alone. That part of the instruction told the jury that from the damages ascertained

they 'should deduct the benefits, if any peculiar to such tract arising from the running of the road through it; and by peculiar benefits is meant such benefits derived from the location of the road as are peculiar to the tract itself, and not shared in common by it and other lands in the same neighborhood.'

"In the giving of this instruction the learned trial judge followed a form approved in McReynolds v. Kansas City C. & S. Ry. Co., 110 Mo. 484, 487, 19 S. W. 824, and later sanctioned in theory in Mississippi County v. Byrd (Mo. Sup.), 4 S. W. (2d) 810, 812. But since the trial of the case below an instruction of similar pattern was condemned by this court en banc in State ex rel. State Highway Commission v. Jones, 15. S. W. (2d) 338, 340. That decision holds the advantages enjoyed by land from abutting on a highway improvement may be a special benefit, notwithstanding other lands along the highway are similarly benefited. In other words, the special benefits do not have to be exclusive and peculiar to the one tract involved. Following the well-reasoned opinion in the Jones case, an instruction' identically like the one in this case was disapproved in State ex rel. State Highway Commission v. Duncan (Mo. Sup., Div. 1), 19 S. W. (2d) 465, 466, 467. So it must be ruled the giving of the instruction in this instance was error."

The plaintiff complains of error in giving defendant's requested Instruction A, which is as follows: "The court instructs the jury that the constitution of the State provides that private property shall not be taken or damaged for public use without just compensation."

This instruction is a mere abstract proposition of law and laid down no guide by which the jury might be aided in reaching a verdict, and in view of what we have heretofore said about the other instruction assuming that there was damage to the property not taken, we think it was prejudicial and likely misleading to give this abstract proposition of law, and suggest that in the next trial, if it be given, that it be connected with the question of whether or not the taking of this particular property was damaging to the property of the defendant.

Instruction D, given at the request of defendant is as follows: "The court instructs the jury that in assessing the damages, if any, to the defendant's land, they will take into consideration the fact that in this condemnation proceeding, the plaintiff acquires the right, title, and interest to all that part of the land of the defendant described in the petition filed herein, and that defendant has no further right, title or interest in same or any part thereof."

This instruction is assailed upon two grounds. In the first instance the plaintiff insists that the instruction is prejudicial because

it ·tells the jury that by this proceeding the plaintiff "Acquired the right, title and interest" to the lands taken and that the "defendant has no further right, title or interest in the same or any part thereof." The plaintiff insists that the title to real estate is not involved in a proceeding of this kind, because the plaintiff is only seeking the use of the property, and that the title to the property is only affected to the extent that plaintiff is seeking an easement for public use, and that it was prejudicial to instruct the jury as herein. Our Supreme Court en banc in two recent cases, Missouri Power & Light Co. v. Creed et al., 30 S. W. (2d) 605, and State ex rel. Highway Commission v. Day et al., 35 S. W. (2d) 37, has held that in proceedings of this kind title to real estate is only indirectly and incidentally affected, and overruled several cases that held that title was involved. [30 S. W. (2d) 1. c. 506.] We think that it was error to so word the instruction to the jury.

This instruction is also criticised because it used the words "to that part of the land of the defendant *described in the petition filed herein.*"

Many times our courts have condemned such an instruction, and upon a trial a new reference to the petition should be avoided.

The plaintiff also complains that witnesses were not qualified to express opinions as to the value of the property taken since this was property used as a resort. The evidence does show that there is a vast difference in the value of this land as farm lands and as to its use as a resort for tourists. Some of the witnesses testified as farmers and as to the value of the land as farm lands. Since this property is being used as a resort and not as farm land, and since as a resort its value is much more than farm lands, we think the witnesses should be qualified as to knowledge of the value of resort lands before being permitted to testify, and recommend that such a course be pursued in the next trial.

For the reasons herein stated the judgment should be reversed and the cause remanded for a new trial. It is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.